IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

RB RUBBER PRODUCTS, INC., an
Oregon Corporation,

                    Plaintiff,

     v.

ECORE INTERNATIONAL, INC., formerly
known as Dodge-Regupol, Inc.,

                  Defendant.

Civ. No. 3:11-cv-319-AC

OPINION AND
ORDER

_____

ACOSTA, Magistrate Judge:

       Defendant ECORE International, Inc. ("ECORE") moves to dismiss Plaintiff RB Rubber

Products, Inc.'s ("RB Rubber") claims against ECORE associated with its patent for rubber

acoustical underlayment.    RB Rubber asserts claims under the Sherman Act, for declaratory

judgment of unenforceability, false marking, violations of the Lanham Act, anti-trust claims under Oregon law, and wrongful initiation of civil proceedings. ECORE moves to dismiss for lack of subject matter jurisdiction, for failure to adequately plead, for failure to raise compulsory counterclaims, and under the doctrines of mootness and collateral estoppel. ECORE also requests that, in the event all federal claims are dismissed, the court decline to exercise jurisdiction over the state law claims. As alternative relief, ECORE asks the court to transfer the case to the Middle District of Pennsylvania, where the parties previously have litigated related claims. Having reviewed the pleadings, operative documents, and the parties respective arguments, the court concludes that RB Rubber's claims should be dismissed as collaterally estopped and insufficiently pleaded.

*Background*

The parties to this action have previously engaged in litigation, in federal court, with respect to the '723 patent. In 2006, ECORE[1] filed a complaint in the Middle District of Pennsylvania against RB Rubber alleging infringement of the '723 patent. RB Rubber asserted counterclaims against ECORE seeking declaratory judgment of non-infringement, invalidity, and unenforceability, premised in part on alleged inequitable conduct and misrepresentations before the Patent and Trademark Office ("PTO"). After some discovery, ECORE elected to withdraw its claims and convenanted not to sue RB Rubber. As such, ECORE moved to dismiss RB Rubber's counterclaims. The court dismissed all claims on the ground that the covenant not to sue eliminated subject matter jurisdiction. The court explained:

> [ECORE]'s withdrawal of its infringement claims and covenant not to sue RB

---

[1] The action was actually filed by Dodge-Regulpol, Inc., which is ECORE's former name. There is no dispute between the parties that ECORE was involved in the Pennsylvania litigation, as Dodge-Regulpol, Inc. The core will hereinafter refer to both entities as "ECORE."

OPINION AND ORDER                    2                                {KPR}

Rubber for infringement of the '723 patent have eliminated any substantial, immediate controversy between the parties, and thereby also eliminated this Court's jurisdiction over RB Rubber's counterclaims for the invalidity and unenforceability of the '723 patent. As at least one judge in the Federal Circuit has recognized that "it may seem unfair to allow a patentee to first proceed with its infringement claim and then, if the result is not favorable, eliminate the court's jurisdiction over the accused infringer's counterclaim by covenanting not to sue the accused infringer. Fairness is not part of the jurisdictional inquiry, however."

(RB Rubber's Request for Judicial Notice (#37), Exhibit ("Ex.") 1 at 19 (quoting *Fort James Corp. v. Solo Cup Co.*, 412 F.3d 1340, 1354-1355 (Fed. Cir. 2005) (Schall, J. dissenting).) Accordingly, the Pennsylvania court dismissed RB Rubber's requests for declaratory judgment.

The Pennsylvania court, however, retained jurisdiction over RB Rubber's claim for attorney fees and, thus, was still in a position to determine if there was inequitable conduct in the patent prosecution. The court concluded that it "retain[ed] jurisdiction to consider a motion for attorney's fees by RB Rubber under § 285. In support of that motion, RB Rubber may attempt to prove this is an exceptional case warranting an award of attorney's fees by showing inequitable conduct which would necessarily result in the unenforceability of that patent." *Id.* at 22.

RB Rubber subsequently moved for attorney fees under federal patent law, in particular 35 U.S.C. § 285 (hereinafter "section 285"). Section 285 states: "The court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285 (2011). The court noted that this exception has been construed narrowly. It wrote: "As this court has consistently found, however, only a limited universe of circumstances warrant a finding of exceptionality in a patent case: 'inequitable conduct before the PTO; litigation misconduct; vexatious, unjustified, and otherwise bad faith litigation; a frivolous suit or willful infringement.'" *Wedgetail, Ltd. v. Huddleston Deluxe, Inc.*, 576 F.3d 1302, 1304 (Fed. Cir. 2009) (quoting *Epcon Gas Sys., Inc. v.*

*Bauer Compressors, Inc.*, 279 F.3d 1022, 1034 (Fed. Cir. 2002)).  The court denied the motion on the ground that, even if there were inequitable conduct in prosecution of the '723 patent, RB Rubber did not demonstrate the exceptional circumstances that justify attorney fees under this statutory section.  (ECORE's Request for Judicial Notice (#24), Ex.10 at 8.)  In doing so, the court declined to rule on whether ECORE engaged in inequitable conduct during prosecution of the '732 patent.

In related litigation, U.S. Rubber Recycling Inc. ("U.S. Rubber"), another of ECORE's competitors, filed suit against ECORE in the Central District of California, asserting claims for violation of the Sherman Act, declaratory judgment that the '723 patent was invalid and unenforceable, for false marking, for violation of the Lanham Act, and three state law claims for negligent and intentional interference with economic advantage, and for unfair competition.[2] ECORE moved to dismiss all claims, and the court dismissed the unfair competition claim, but did not dismiss the remaining claims.  Later, in light of the reissue of the '723 patent ("the reissue patent"), which explicitly considered the allegedly withheld prior art from the original proceeding, the court held that U.S. Rubber could not plausibly allege that "but-for" the allegedly withheld prior art the patent would not have issued and, therefore, the Sherman Act claim was dismissed.  ECORE then moved for summary judgment on all remaining claims and the court granted summary judgment in ECORE's favor on U.S. Rubber's request for declaratory judgment that the patent was unenforceable, the Lanham Act violation, and the remaining state law claims for interference with

---

[2] Although this case is not binding precedent upon this court, the court finds Judge Otero's decision well-reasoned and will refer to it as relevant to the present matter.  Accordingly, such references shall not be construed as erroneous deference to non-binding precedent.  As the Seventh Circuit Court of Appeals has explained, district court opinions are not binding on other district courts, and "[s]uch decisions will normally be entitled to no more weight than their intrinsic persuasiveness merits."  *Colby v. J.C. Penney Co., Inc.*, 811 F.2d 1119, 1124 (7th Cir. 1987).

economic advantage. The court denied summary judgment on the false marking claim. It is not clear from the disposition the fate of the request for declaratory judgment that the '723 patent was invalid, but this court presumes that it was deemed moot in light of the reissue patent.

Since the California court's first ruling on summary judgment, the law governing false marking claims has changed. Under the recently enacted Leahy-Smith America Invents Act, the ability of any individual to sue for the statutory penalty has been modified such that, now, "[o]nly the United States may sue for the penalty" authorized by statute, though an individual who can demonstrate "competitive injury as a result of this section may file a civil action in a district court of the United States for recovery of damages adequate to compensate for the injury." 112 P.L. 29 § 16(1),(2). Due to the intervening change in law, the court permitted additional expert discovery and briefing, as well as a second motion for summary judgment on the issue of competitive injury. The court concluded that U.S. Rubber had failed to create "a triable issue as to whether [U.S. Rubber]'s inability to meet its sales projections was a result of [ECORE]'s false marking." *U.S. Rubber Recycling, Inc. v. ECORE International*, CV 09-09516 SJO (OPx) (C.D. Cal. Dec. 12, 2011). Accordingly, ECORE's motion for summary judgment on U.S. Rubber's false marking claim was granted on December 12, 2011.

### Legal Standard

In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the Supreme Court addressed the pleading standard to adequately state a claim under the Federal Rules of Civil Procedure. Rule 8(a) governs pleadings and calls for "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." FED. R. CIV. P. 8(a) (2009). In 2007, the Court explicitly departed from the often cited standard set forth in *Conley v. Gibson*, 355 U.S. 41 (1957). The *Conley* standard held

that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt

that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."

*Id.* at 45-46. The *Twombly* court rejected this as an inappropriate pleading standard, and indicated

that it had been taken out of its original context and should be "forgotten as an incomplete, negative

gloss on an accepted pleading standard:  once a claim has been stated adequately, it may be

supported by showing any set of facts consistent with the allegations in the complaint."  550 U.S.

at 563.

Not only did *Twombly* depart from the previous standard, it emphasized the need to include

sufficient facts in the pleading to give proper notice of the claim and its basis:  "While a complaint

attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's

obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and

conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Id.* at 555

(brackets omitted).  Even so, the court noted that "a well-pleaded complaint may proceed even if it

strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very

remote and unlikely.'"  *Id.* at 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

Since *Twombly,* the Supreme Court made clear that the pleading standard announced therein

is generally applicable to cases governed by the Federal Rules of Civil Procedure, and not just those

cases involving antitrust allegations.

> As the Court held in *Twombly*, the pleading standard Rule 8 announces does not
> require "detailed factual allegations," but it demands more than an unadorned, the-
> defendant-unlawfully-harmed-me accusation.  A pleading that offers "labels and
> conclusions" or "a formulaic recitation of the elements of a cause of action will not
> do."

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (quoting *Twombly*, 550 U.S. at 555) (internal citations

omitted); *see also Villegas v. J.P Morgan Chase & Co.*, No. C 09-00261 SBA, 2009 U.S. Dist. LEXIS 19265, at *7-8 (N.D. Cal. Mar. 6, 2009) ("The Twombly standard, moreover, is of general application and is as easily applied to wage and hour litigation as antitrust."). The Court identified two principles informing the decision in *Twombly*. First, although the court must assume true all facts asserted in a pleading, it need not accept as true any legal conclusions set forth in a pleading. Second, the complaint must set forth a plausible claim for relief and not merely a possible claim for relief. The Court advised that "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft*, 129 S. Ct. at 1949-50 (citing *Iqbal v. Hasty*, 490 F.3d 143, 157-158 (2nd Cir. 2007)). In conclusion, the Court wrote: "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 1950.

*Discussion*

I.    Judicial Notice

Both parties have filed requests for judicial notice, namely ECORE's Request for Judicial Notice in Support of its Motion to Dismiss (#24), RB Rubber's Request for Judicial Notice (#37), and ECORE's Second Request for Judicial Notice in Support of its Motion to Dismiss (#38). ECORE's initial request for judicial notice is opposed, in part, by RB Rubber. RB Rubber objects to judicial notice of proposed Exhibits 2-8, which consist of brochures presented to the PTO "in connection with the prosecution of the reissue patent . . . ." (ECORE's RJN (#24) ¶ 2.)

In general, a court's ruling on a motion to dismiss is based solely on the allegations in the

complaint; otherwise, the motion must be converted into a motion for summary judgment. *See Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994) ("'Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion.' When 'matters outside the pleading are presented to and not excluded by the court,' a Rule 12(b)(6) motion is to 'be treated as one for summary judgment and disposed of as provided in Rule 56 . . . .'" (citing *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990), and FED. R. CIV. P. 12(b)).

Two exceptions to this rule exist:

> First, a court may consider "material which is properly submitted as part of the complaint" on a motion to dismiss without converting the motion to dismiss into a motion for summary judgment. If the documents are not physically attached to the complaint, they may be considered if the documents' "authenticity . . . is not contested" and "the plaintiff's complaint necessarily relies" on them. Second, . . . under [Federal Rule of Evidence] 201, a court may take judicial notice of "matters of public record."

*Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001) (citing *Branch*, 14 F.3d at 453; *Parrino v. FHP, Inc.*, 146 F.3d 699, 705-06 (9th Cir. 1998); *Mack v. South Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986)).

The first exception, the doctrine of incorporation by reference, applies where the complaint necessarily relies on extrinsic evidence. *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006). Material is necessarily relied upon "if (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Id.* And, to merit incorporation by reference, the complaint must refer to the content of the document and not merely its existence. *Branch*, 14 F.3d at 454 ("[W]e hold that documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6)

motion to dismiss.") Where the document meets these requirements, the document is "considered part of the pleading." *U.S. v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (citing FED. R. CIV. P. 10(c)).

ECORE argues that a court may take judicial notice of documents before the PTO during patent prosecution as they are in the public record. ECORE cites *Applied Materials, Inc. v. Advanced Semiconductor Materials America, Inc.*, No. C-92-20643 RMW, 1994 WL 270714 (N.D. Cal. 1994), wherein the court noticed a very similar set of documents. It stated that "a court may take judicial notice of 'records and reports of administrative bodies.' Therefore, this court will take judicial notice of the United States Patent Office's public records of the [application proceedings] which issued into [the subject patent]." *Id.* at *2 (quoting *Mack*, 789 F.2d at 1282). ECORE argues for admission of the prior art submitted to the PTO during the reissue proceedings as evidence of the prosecution history of the '723 patent. It also cites the decision in the Central District of California, where the court admitted the same documents. *See ECORE's Memorandum in Support of Motion to Dismiss*, at 9 ("Therefore, the Court should take judicial notice of the prosecution history . . . and come to the same result as the California court, namely that RB Rubber's claim that the '723 patent would not have issued but for the alleged withheld prior art is baseless."). Importantly, ECORE's focus is on admitting the documents to establish the prosecution history of the '723 patent, specifically that the documents were before the PTO on reissue, and not for their particular factual content.

RB Rubber argues that judicial notice of the brochures would be inappropriate at this stage of litigation. RB Rubber argues that the authority cited by ECORE, the district court decision in *Applied Materials*, is not applicable here because in that case the request for judicial notice was not

opposed. RB Rubber also argues that the factual content of the brochures is not relevant at this stage of the litigation. RB Rubber cites no authority for this argument, but the court notes that this argument it not relevant, as ECORE does not seek to introduce the content of the brochures, but rather their presence as prior art during the reissue proceedings.

ECORE replies that the brochures are all publicly available documents that were used in prosecuting the reissue patent relevant to this case and argues that these are precisely the kind of documents that should be judicially noticed for purposes of this motion. ECORE also notes that the documents in question were specifically referenced in RB Rubber's complaint and, as such, meet the general standard that documents are both referenced in the complaint and their authenticity is not disputed by either party.

The court agrees that it may take judicial notice of the brochure evidence for the reasons cited by ECORE. And, consistent with ECORE's stated purpose for admission, it will take notice of these documents for the limited purpose of evaluating the prosecution history of the '723 patent, but not for the factual information contained therein. Thus, ECORE's request (#24) is granted for the purpose of noticing that the admitted documents were before the PTO during prosecution of the reissue patent, but not for their particular factual content.

The other two requests for judicial notice are not opposed. By these requests, each party seeks judicial notice of court documents in related litigation. The court grants also these requests for judicial notice (#37, 38).

II.    Request for Declaratory Judgment

RB Rubber seeks declaratory judgment that the '723 patent is unenforceable. ECORE argues that the claim is collaterally estopped by the Pennsylvania court's ruling that the covenant not to sue

deprived claims for declaratory judgment of subject matter jurisdiction. The court agrees that this and other claims for declaratory judgment must be dismissed under the doctrine of collateral estoppel.

The parties do not dispute the underlying standard for collateral estoppel. Collateral estoppel bars relitigation of issues adjudicated in an earlier proceeding if three requirements are met: "(1) the issue necessarily decided at the previous proceeding is identical to the one which is sought to be relitigated; (2) the first proceeding ended with a final judgment on the merits; and (3) the party against whom collateral estoppel is asserted was a party or in privity with a party at the first proceeding." *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 (9th Cir. 2006) (quoting *Kourtis v. Cameron*, 419 F.3d 989, 994 (9th Cir. 2005)).

The first prong considers the similarity between the present issue, and the issue previously litigated. ECORE contends that the issue in question is whether the court has subject matter jurisdiction to hear a request for declaratory judgment in light of ECORE's covenant not to sue. According to ECORE, this precise issue was decided by the Pennsylvania court and cannot be relitigated. RB Rubber responds that the request for declaratory judgment is not estopped because it was dismissed without prejudice, and that the estoppel does not apply to its request for attorney fees. ECORE responds that dismissals for lack of subject matter jurisdiction, although technically without prejudice as they do not represent judgments on the merits, have preclusive effect on the jurisdictional issue. Furthermore, ECORE argues that the attorney fee issue was also specifically adjudicated previously and is therefore similarly subject to collateral estoppel.

In patent litigation, a covenant not to sue for infringement divests a court from hearing claims for declaratory judgment that the patent is invalid or otherwise unenforceable:

OPINION AND ORDER                    11                    {KPR}

> Under Federal Circuit precedent, a properly executed covenant not to sue for infringement not only moots the controversy with respect to infringement, but it also eliminates subject matter jurisdiction with respect to remaining declaratory claims for patent invalidity and unenforceability.

*MedImmune, Inc. v. Genentech, Inc.*, 535 F. Supp 3d 1000, 1005 (C.D. Cal. 2008) (citing *Highway Equip. Co., Inc. v. FECO, Ltd.*, 469 F.3d 1027, 1033 n.1 (Fed. Cir. 2006); *SuperSack Mfg. Corp. v. Chase Packaging Corp.*, 57 F.3d 1054, 1058 (Fed. Cir. 1995); *Benitec Australia, Ltd. v. Nucleonics, Inc.*, 495 F.3d 1340, 1340 (Fed. Cir. 2007)). This point is not disputed by the parties, and the court agrees that the ECORE's covenant not to sue RB Rubber for infringement of the '723 patent divests this court of jurisdiction over such requests for declaratory judgment, just as it did in the Pennsylvania court in one of the previous incarnations of this litigation. This claim should be dismissed, first, because it was previously decided by the Pennsylvania court and is thus collaterally estopped and, second, because under binding federal precedent, the court lacks subject matter jurisdiction in light of the covenant not to sue. Further, this claim is not saved by RB Rubber's request for attorney fees in the Pennsylvania litigation, an issue explicitly decided against RB Rubber by the Pennsylvania court.

RB Rubber attempts to avoid application of this rule by relying on the fact that the Pennsylvania court dismissed its requests for declaratory judgment without prejudice. However, as ECORE argued in its reply brief, a dismissal for lack of subject matter jurisdiction is always without prejudice and merely indicates that the merits of the claim were not reached, and the ruling itself is preclusive on the jurisdictional issue. *See Deutsch v. Flannery*, 823 F.2d 1361, 1364 (9th Cir. 1987) ("It matters not that the prior action resulted in a dismissal without prejudice, so long as the determination being accorded preclusive effect was essential to the dismissal."); *see Hill v. Potter*,

352 F.3d 1142, 1146-1147 (7th Cir. Ill. 2003) ("Dismissals for want of subject-matter jurisdiction are always denominated without prejudice, because they signify that the court did not have the power to decide the case on the merits. But they are preclusive with respect to the jurisdictional ruling, as otherwise the plaintiff would be free to refile the identical case in the same court." (citations omitted)). The jurisdictional basis for dismissal has equal weight in this district based on established and binding precedent and, thus, the Pennsylvania court's ruling has preclusive effect here. Accordingly, this claim is dismissed without prejudice.

III.    The Anti-Trust Claims

In *Walker Process Equipment, Inc. v. Food Machinery & Chemical Corp.*, 382 U.S. 172, 174 (1965), the Supreme Court held that "the enforcement of a patent procured by fraud on the Patent Office may be violative of § 2 of the Sherman Act provided the other elements necessary to a § 2 case are present." These claims are premised on "inequitable conduct" before the PTO and, as such, inequitable conduct must necessarily be pleaded to state a claim. *See Therasense, Inc. v. Becton, Dickinson and Co.*, 649 F.3d 1276, 1289 (9th Cir. 2011) ("A finding of inequitable conduct may also spawn anti-trust and unfair competition claims." (citing *Walker Process*)). Such claims are often referred to as *Walker Process* claims, and RB Rubber asserts just such a claim against ECORE, alleging that ECORE engaged in inequitable conduct before the PTO in obtaining its patent.

*A.    Pleading Deficiency*

RB Rubber has asserted two anti-trust claims against ECORE. One claim arises under section 2 of the Sherman Act and the other claim is premised on Oregon anti-trust law. ECORE moves to dismiss these claims on the ground that RB Rubber cannot plausibly plead the causation required for an anti-trust claim, in particular that but-for the exclusion of allegedly withheld prior

OPINION AND ORDER                           13                              {KPR}

art, the patent would not have been granted. ECORE argues, first, that the allegations are too conclusory to state a claim and, second, that the allegations are obviously false in that all of the allegedly invalidating prior art, and all related arguments, were before the PTO at the time of reissue.

RB Rubber responds, first, that the court in the California case stated that it had been unable to locate Federal Circuit precedent for the proposition that a patent's reissuance will cure an alleged *Walker Process* violation. In that case, ECORE sought judgment on the pleadings and the district court dismissed the claim under section 2 of the Sherman Act as asserted against ECORE with respect to the same patent. The court surveyed relevant precedent and concluded that the reissuance the '723 patent made it impossible for RB Rubber to allege that the '723 patent would not have been issued but-for the allegedly withheld prior art: "Even with the contentious prior art, the PTO issued RE41945 to [ECORE], and did so after reviewing the patent as if for the first time. The re-issuance does not cure the alleged fraud, but it is dispositive of whether the PTO would have issued the origianl '723 Patent." (ECORE's RJN (#24), Ex. 12 at 5.) The court explained that this precluded the plaintiff, U.S. Rubber, from plausibly pleading its claim under section 2 of the Sherman Act: "As in on *Old Reliable Wholesale*, the re-issuance of RE41945 is probative. Because the PTO reexamines re-issuance applications as if being presented for the first time, the fact that the PTO *did* re-issue [ECORE's] patent even *with* the prior art precludes [U.S. Rubber] from plausibly pleading Claim One." *Id.* The fact that the court also stated that it had been unable to locate relevant precedent stating that reissue of a patent would always cure an alleged *Walker Process* violation does not undermine its conclusion that, under the facts of the case before it, the reissue of the '723 patent precluded the plaintiff from plausibly pleading but-for causation.

Further, as ECORE correctly argues, the Federal Circuit subsequently held that where a

OPINION AND ORDER                    14                         {KPR}

patent would have issued even if the allegedly withheld prior art had been disclosed, a patentee has not, as a matter of law, engaged in inequitable conduct. *Therasense, Inc.*, 649 F.3d at 1291. This rule extends, at least implicitly, to a patent that has been reissued in light of subsequently produced prior art: "Because inequitable conduct renders an entire patent (or even a patent family) unenforceable, as a general rule, this doctrine should only be applied in instances where the patentee's misconduct resulted in the unfair benefit of receiving an unwarranted claim. . . . After all, the patentee obtains no advantage from misconduct if the patent would have issued anyway." *Id.* at 1292. Although the Federal Circuit recognizes an exception for inequitable conduct that rises to the level of "affirmatively egregious misconduct[,]" this exception does not extend to "mere nondisclosure of prior art references to the PTO [or] failure to mention prior art references in an affidavit" unless the omission was the but-for cause of the patent's issuance. *Id.* at 1292-1293. Thus, where a patent reissues after full disclosure of the allegedly withheld prior art, a claim for inequitable conduct may not plausibly be pleaded without otherwise establishing affirmatively egregious conduct.

Second, RB Rubber argues that not all of the allegedly withheld prior art was before the court in the California case when it concluded that defendant U.S. Rubber could not establish the requisite causal connection. RB Rubber argues that this court must consider this additional evidence and arrive at a conclusion contrary to that of the California court. ECORE responds that the allegedly withheld art should not impact the court's decision because it is not referred to in the current complaint and actually was considered by the California court in reaching its decisions on the pleadings and on summary judgment.

U.S. Rubber argued to the California court, and RB Rubber argues here, that a binder

containing prior art was withheld from the PTO. In fact, the California court did exclude the binder from the record as not properly before the court, but went on to note that, even if it had been properly submitted, the court would have reached the same conclusion because the record indicated that it had been produced to the PTO and, therefore, could not provide a basis of but-for materiality. (ECORE's RJN (#37), Exhibit 3 at 4-5, 8.) U.S. Rubber also argued to the California court, and RB Rubber argues here, that deposition testimony about the identity of the inventor of the patented product was not before the PTO. RB Rubber does not identify the depositions in any greater detail. ECORE argues that the depositions were addressed in the California court's disposition on summary judgment, where the court found that the evidence had been submitted to the PTO and had not prevented reissue of the '723 patent, thus eliminating it as a potential basis of but-for materiality. The California court wrote: "Soukas and Hainbach testified that 'the claimed invention was manufactured, sold and used decades earlier, as early as the '70s and '80s.' Yet the PTO found these alleged prior art did not invalidate the claimed invention." (ECORE's RJN (#38), Exhibit 1 at 7.)

Here, RB Rubber claims that material prior art was withheld from the PTO and that but-for this omission, the patent would not have issued. In particular, RB Rubber cites the omission of material regarding specific products (Everlast, ECOshock, Pulastic, and ElastiPlus) and brochures (Trittschalldammung, Ultimate Choice, and Impact Sound). RB Rubber also refers to "recycled rubber underlayment for use with Astroturf" but does not further identify the product. (Complaint ¶ 46.) ECORE responds that all of the allegedly withheld prior art was produced during the reissue proceedings. ECORE has submitted excerpts of the publicly available prosecution history, and this submission contains all of the allegedly withheld prior art. *See* ECORE's RJN (#24), Exhibits 2-8. RB Rubber does not rebut this submission, but merely argues that there was additional prior art not

OPINION AND ORDER                                16                                {KPR}

referred to in the complaint.

The court agrees that RB Rubber is unable to plausibly plead the required causation element sufficient to state a *Walker Process* claim. All of the prior art cited by RB Rubber in its complaint was actually before the PTO when it reissued the '723 patent. Thus, RB Rubber cannot establish that had the PTO been aware of the prior art, the patent would not have issued. That the California court reached the same result in a different but related case only buttresses the court's conclusion that the anti-trust claim must be dismissed. Furthermore, the deficiency could not be cured by amendment, because the deficiency is legal. Thus, this claim is dismissed with prejudice.

B.    *Compulsory Counterclaims*

ECORE argues that these claims must also be dismissed as they should have been pleaded as compulsory counterclaims in the Pennsylvania case. RB Responds that, because its counterclaims were dismissed without prejudice, ECORE's argument is without merit. In light of the fact that RB Rubber cannot adequately plead this claim, the court need not address whether dismissal would be appropriate on this alternative ground.

C.    *State Law Antitrust Claim*

"The Oregon antitrust statutes are almost identical to the federal antitrust statutes. In fact, Oregon courts look to federal antitrust decisions for 'persuasive' guidance in interpreting the state antitrust laws. *Jones v. City of McMinnville*, 244 Fed. Appx. 755, 758 (9th Cir. Or. 2007) (citing *Willamette Dental Group, P.C. v. Oregon Dental Serv. Corp.*, 130 Or. App. 487, 492, 882 P.2d 637 (1994)). RB Rubber has not provided the court a basis with which to distinguish the merits of its Oregon antitrust claim. The court concludes that this claim must also be dismissed with prejudice.

IV.    <u>False Marking</u>

ECORE argues that RB Rubber failed to plead the alleged false marking violation with particularity. RB Rubber responds that it has pleaded the factual allegations with particularity, citing specifically to sections regarding the fraudulent procurement of the '723 patent and the withheld prior art.

"A false marking claim requires an intent to deceive the public and sounds in fraud. As such, false marking claims must satisfy the heightened pleading standard of Fed. R. Civ. P. 9(b), which provides that 'a party must state with particularity the circumstances constituting fraud or mistake.'" *Juniper Networks, Inc. v. Shipley*, 643 F.3d 1346, 1350 (Fed. Cir. 2011) (citations omitted).

> The two elements of a § 292 false marking claim are (1) marking an unpatented article and (2) intent to deceive the public. "Intent to deceive is a state of mind arising when a party acts with sufficient knowledge that what it is saying is not so and consequently that the recipient of its saying will be misled into thinking that the statement is true." A party asserting false marking must show by a preponderance of the evidence that the accused party did not have a reasonable belief that the articles were properly marked. An assertion by a party that it did not intend to deceive, standing alone, "is worthless as proof of no intent to deceive where there is knowledge of falsehood."

*Forest Group, Inc. v. Bon Tool Co.*, 590 F.3d 1295, 1300 (Fed. Cir. 2009) (citing and quoting *Clontech Labs. Inc. v. Invitrogen Corp.*, 406 F.3d 1347, 1352-1353 (Fed. Cir. 2005)).

Here, RB Rubber has pleaded the following in conjunction with its false marking claim. RB Rubber alleges that the '723 patent covers acoustical underlayment flooring of a thickness of "about 10mm" and the Pennylvania court construed this claim to mean acoustical underlayment flooring between nine and eleven millimeters. (ECORE's Request for Judicial Notice (324), Ex. 1 at 7.) According to RB Rubber, ECORE places the mark of the '723 patent on acoustical underlayment flooring products with thicknesses ranging from two to fifteen millimeters. In particular, RB Rubber

alleges: "ECORE has marked its advertisements and products, including the Regupol-QT and Qtscu, with the '723 Patent number despite the knowledge that the claims of the '723 Patent clearly do not cover 9-11 mm, and despite that the '723 Patent is invalid and unenforceable, and fraudulently procured." (Complaint ¶ 100.) It further alleges, in conclusory fashion, that ECORE has caused these products to enter interstate commerce, has done so for the purpose of deceiving the public, and has effectively deceived the public, causing RB Rubber to incur damages. As such, RB Rubber alleges that ECORE is in violation of the false marking statute.

The court agrees that RB Rubber's allegations are insufficiently particularized to satisfy the pleading standard for this allegedly fraudulent action. RB Rubber does not provide detailed information regarding the "'the specific who, what, when, where, and how' of the alleged fraud[.]" *In re BP Lubricants USA Inc.*, 637 F.3d 1307, 1309 (Fed. Cir. 2011) (quoting *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1327 (Fed. Cir. 2009). Beyond identifying the particular products allegedly falsely marked, RB Rubber provides no particular information regarding this marking. Thus, based on the pleading currently before this court, RB Rubber's false marking claim must be dismissed for failure to meet the applicable pleading standard. This claim is dismissed without prejudice as its deficiency could conceivably be cured by amendment.

IV.    Lanham Act

ECORE argues that RB Rubber's Lanham Act claim should be dismissed for failure to sufficiently plead that ECORE made material false statements and that those statements actually caused harm. ECORE also argues that a patent must be held invalid or unenforceable before it can give rise to a claim under the Lanham Act and that any allegedly false representations regarding the '723 patent's validity are wholly undermined by the reissue patent. RB Rubber responds that it did

OPINION AND ORDER                    19                            {KPR}

in fact plead the claim in great detail, and that a Lanham Act claim may be premised on a claim not

yet invalidated or deemed unenforceable where the same complaint seeks findings of invalidity and

uneforceability.  RB Rubber also notes that the standards for Lanham Act violations and for

inequitable conduct before the PTO are different, an argument presumably offered to counter the

argument that but-for causation has already been decided.  ECORE replies that RB Rubber did not

rebut its assertion that RB Rubber has merely pleaded labels and conclusions, rather than a viable

claim under the Lanham Act.

> A claim under the Lanham Act must satisfy the following elements:

> (1) a false statement of fact by the defendant in a commercial advertisement about its
> own or another's product; (2) the statement actually deceived or has the tendency to
> deceive a substantial segment of its audience; (3) the deception is material, in that it
> is likely to influence the purchasing decision; (4) the defendant caused its false
> statement to enter interstate commerce; and (5) the plaintiff has been or is likely to
> be injured as a result of the false statement, either by direct diversion of sales from
> itself to defendant or by a lessening of the goodwill associated with its products.

*Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (Fed. Cir. 1997) (citing *Cook, Perkiss*

*and Liehe, Inc. v. Northern Cal. Collection Servs., Inc.*, 911 F.2d 242, 244 (9th Cir. 1990)).

RB Rubber's claim is premised on the following allegation:  "ECORE has marked its

advertisements and products with the '723 Patent number despite the knowledge that the claims of

the '723 Patent clearly do not cover 9-11 mm, and despite that the '723 Patent is invalid and

unenforceable, and fraudulently procured."  (Complaint ¶ 111.)  ECORE argues that until the patent

is deemed invalid or unenforceable, this representation cannot amount to a false statement under the

Lanham Act.

Ecore cites *IMCS, Inc. v. D.P. Tech. Corp.*, 264 F. Supp 2d 193 (E.D. Pa. 2003), in support

of this proposition.  In that case, the patent holder had sued the defendant for infringement, and the

defendant asserted a counterclaim under the Lanham Act. The counterclaim was premised on the patent holder's representation that the product was protected by the patent at issue. The court reasoned:

> Defendant's first allegation, that Plaintiff advertised that its software is protected by the '133 patent, is a true statement and, therefore, does not meet the first requirement of a § 43(a). Under patent law, patents receive a presumption of validity. Even if a patent was obtained through fraud and even if upon examination, a court would invalidate that patent, until such a determination of invalidity is made, the patent is considered valid and enforceable. As such, Plaintiff's statements as to the contemporaneous existence of the patent are true and are not misleading. Therefore, those statements could not violate the Lanham Act § 43(a).

*Id.* at 197 (citing *Concrete Unlimited Inc. v. Cementcraft, Inc.*, 776 F.2d 1537, 1538 (Fed. Cir. 1985); 35 U.S.C. § 282). Although this case is not binding on this court, the court finds its analysis sound and persuasive.

ECORE also argues that, in light of the '723 patent's reissue, RB Rubber cannot plausibly plead that ECORE knew that the patent was invalid and, thus, the statement false or misleading. In *Old Reliable Wholesale Inc. v. Cornell Corporation*, 635 F.3d 539 (Fed. Cir. 2011), the patent holder, Old Reliable, filed an infringement suit against Cornell, a competitor. The parties disagreed as to whether the patented device was anticipated, and Cornell requested reexamination of the patent by the PTO. The PTO initially issued a "notice of intent to issue an *ex parte* reexamination certificate confirming the patentability of all claims of the *'950 patent*." *Id.* at 543 (emphasis in original). This notice was later rescinded, but the court nonetheless concluded that "[t]he fact that the PTO, after assessing the relevant prior art, confirmed the patentability of all claims of the *'950 patent* undercut[] Cornell's contention that Old Reliable had no reasonable basis for its assertion that its patent was not anticipated." *Id.* at 548 (emphasis in original). ECORE seeks to extend this

reasoning to the present case where the patent was actually reissued, as evidence that ECORE could

not have known that the patent was invalid because it was, in fact, valid. The court agrees that,

having possessed a valid patent for its product, ECORE could not have committed a Lanham Act

violation premised on a false statement that the product was covered by the patent because the

product was, in fact, covered by the patent. As such, the court agrees that RB Rubber cannot

plausibly plead that ECORE's alleged conduct amounted to a false statement and this claim is thus

inadequately pleaded and is dismissed. This claim is dismissed with prejudice because amendment

could not cure this legal insufficiency.

V.    Wrongful Initiation of Civil Proceedings

    RB Rubber alleges a claim for wrongful initiation of civil proceedings against ECORE

premised on ECORE's initiation of a 2006 infringement suit in the Middle District of Pennsylvania.

ECORE argues that this claim fails because RB Rubber failed to plead a lack of probable cause to

prosecute the action, RB Rubber was not the prevailing party in the prior action, and RB Rubber

cannot plausibly plead that ECORE acted with malice. RB Rubber argues that it did adequately

plead that ECORE lacked a reasonable belief that its patent was valid because it knew of undisclosed

prior art; that the prior proceeding resolved in its favor because ECORE dismissed its infringement

claims and covenanted not to sue RB Rubber; and that ECORE's action was malicious in light of

its knowledge of the prior art.

    A malicious prosecution claim has five elements:

        A plaintiff who seeks damages against one who wrongfully prosecutes a civil
    action against him must prove the following elements: (1) The commencement and
    prosecution by the defendant of a judicial proceeding against the plaintiff;(2) The
    termination of the proceeding in the plaintiff's favor; (3) The absence of probable
    cause to prosecute the action; (4) The existence of malice, or as is sometimes stated,

the existence of a primary purpose other than that of securing an adjudication of the claim; and (5) Damages.

*Alvarez v. Retail Credit Association*, 234 Or. 255, 259, 381 P.2d 499 (1963) (citation omitted; formatting altered). RB Rubber alleges that ECORE initiated a civil action for infringement against it, but when discovery "revealed that ECORE intentionally failed to disclose material prior art, including prior art flooring systems that were offered and sold by ECORE's predecessor and its own joint venture partner, BSW, ECORE voluntarily dismissed the Pennsylvania RB Rubber action in November 2008." (Complaint ¶ 134.) RB Rubber contends this action was maliciously initiated because ECORE knew it did not have a valid patent and brought the action in bad faith, with intent to monopolize the relevant market. RB cites other actions by ECORE against other competitors to bolster its allegation that the motive was to create a monopoly of the acoustical underlayment flooring market. As damages, RB Rubber cites its attorney fees incurred in the Pennsylvania action.

A.    *Favorable Termination*

ECORE argues that, because it voluntarily dismissed its infringement claims before the Pennsylvania court, RB Rubber cannot plausibly allege that the proceedings terminated in RB Rubber's favor. In fact, ECORE argues, RB Rubber actually lost in Pennsylvania as it was unsuccessful in its request for attorney fees as the prevailing party because it could not establish inequitable conduct on ECORE's part.

ECORE cites *Jacobsen v. Katzer*, 609 F. Supp. 2d 925 (N.D. Cal. 2009), a case that addressed whether a party may be characterized as a "prevailing party" for purposes of obtaining attorney fees where the claims against it were voluntarily dismissed. The *Jacobsen* court quoted *Buckhannon Bd. and Care Home Inc. v. West Virginia Dept. of Health and Human Resources*, 532

U.S. 598, 605 (2001), wherein the Supreme Court wrote: "A defendant's voluntary change in conduct, although perhaps accomplishing what the plaintiff sought to achieve by the lawsuit, lacks the necessary judicial *imprimatur* on the change. Our precedents thus counsel against holding that the term 'prevailing party' authorizes an award of attorney's fees *without* a corresponding alteration in the legal relationship of the parties." (emphasis in original). The *Jacobsen* court extended this principle to situations where a patent is voluntarily disclaimed. *See id*. at 931 ("Because, as the patent at issue was voluntarily disclaimed, the Court cannot find that Jacobsen is the prevailing party in this matter.").

The court notes, first, that the prevailing party standard for attorney fees is distinct from the second element of a wrongful initiation claim, which requires termination of the proceedings in the claimant's favor. Under Oregon law, "the analysis of the effect of termination 'does not necessarily depend on whether the dismissal was with, or without, prejudice.' Instead, it requires an examination of the circumstances resulting in the termination and whether the dismissal 'reflects adversely on the merits of the underlying action.'" *Crosswhite v. Cole*, Civil No. 03-156-KI, 2003 U.S. Dist. LEXIS 25607, at *16 (D. Or. Sept. 19, 2003) (quoting *Portland Trailer & Equipment, Inc. v. A-1 Freeman Moving & Storage, Inc.*, 182 Or. App. 347, 356, 49 P3d. 803 (2002)). So, in determining whether this element is adequately pleaded, the court must consider the merits of the underlying case.

The underlying case at issue here, the Pennsylvania case, came to an end when ECORE voluntarily dismissed its claims and covenanted not to sue RB Rubber for infringement under the '723 patent. In its disposition granting ECORE's motion to voluntarily dismiss its claims, the Pennsylvania court did not specifically state what gave rise to ECORE's voluntary dismissal. It did,

OPINION AND ORDER                    24                    {KPR}

however, indicate that ECORE was at least contemplating the possibility that its patent would be deemed invalid or unenforceable. The Pennsylvania court wrote:

> This case has been pending for more than two years and nine months, and has progressed through a *Markman* hearing and decision and significant discovery. RB Rubber has incurred substantial expenses in conducting discovery and litigating this case. [ECORE] has provided no explanation for the abrupt and belated withdrawal of its infringement claims, although the desire to avoid the adverse effects of the Court's claim construction and a potential ruling on the validity and enforceability of the '723 patent are plainly evident.

(RB Rubber's RJN (#37), Ex. 1 at 20.) Thus, it appears that, after almost three years of litigation, the merits of ECORE's infringement claims were compromised to some degree, and its voluntary dismissal did indeed "reflect[] adversely on the merits of the underlying action." *Portland Trailer*, 182 Or. App. at 346. Furthermore, that ECORE was able to immunize itself from a validity or enforceability challenge by entering into a covenant not to sue RB Rubber does not speak to the underlying merits. The court concludes that it is plausibly alleged that termination of the Pennsylvania case favored RB Rubber.

### B.   Probable Cause

The legal standard for establishing probable cause in a claim for wrongful initiation of civil suit was addressed thoroughly by the Oregon Court of Appeals in *Roop v. Parker Northwest Paving, Co.*, 194 Or. App. 219, 94 P.3d 885 (2004). Under Oregon law, "[f]or purposes of a claim for wrongful initiation of civil proceedings, probable cause means that the person initiating the civil action 'reasonably believes' that he or she has a good chance of prevailing – that is, he or she subjectively has that belief and the belief is objectively reasonable." *Id.* at 238 (quoting *Perry v. Rein*, 187 Or. App. 572, 578, 71 P3d 81 (2003)).

The court stated further:

> The standard for probable cause to bring a civil action is less stringent than that required to prosecute a criminal action. . . . The voluntary dismissal of a claim does not automatically create a presumption that the claim was filed without probable cause. Any number of explanations might be at the root of such a dismissal. Thus, the significance of the dismissal "depends upon the circumstances under which the proceedings are withdrawn," and, in particular, whether there is an explanation for the dismissal other than the lack of probable cause.

*Id.* at 238-239 (quoting *Portland Trailer & Equip., Inc.,* 182 Or. App. at 351) (citations omitted). Here, to have probable cause to lawfully sue RB Rubber for infringement, ECORE must have had the subjective and reasonable belief that it had a "good chance" of prevailing in its infringement action against RB Rubber.

RB Rubber's theory is that, at the time it initiated the Pennsylvania case, ECORE knew that the '723 patent was obtained through inequitable conduct before the PTO and, therefore, ECORE lacked probable cause to prosecute the infringement action. ECORE allegedly committed inequitable conduct when it intentionally withheld a substantial amount of prior art from the PTO, some of which consisted of products sold by ECORE and its affiliates. ECORE responds that RB Rubber cannot plausibly plead an absence of probable cause to prosecute the infringement action because the patent was valid at the time the case was filed, and was subsequently reexamined and reissued as valid. Therefore, because the patent was reissued in full view of all prior art, ECORE could not have known that the patent was not valid when it initiated the suit, because the patent was in fact valid. ECORE contends that this was true, despite the fact that the prior art had not been produced during the original patent prosecution.

The question before the court as to probable cause is a narrow one: can a patent holder, that both knows of undisclosed prior art and believes that the patent is not valid or enforceable,

OPINION AND ORDER                     26                     {KPR}

wrongfully initiate an infringement action, even if the patent later reissues in light of the knowingly withheld prior art?  In other words, if a patent is ultimately deemed valid, can an otherwise sound infringement claim have been brought unlawfully, based on the subjective and incorrect belief of its invalidity held by the patent holder at the time the suit was initiated?  In the absence of direct evidence of ECORE's alleged subjective belief that the patent it held at the time of initiation was invalid, this argument is a slender reed upon which to premise probable cause.

RB Rubber alleges, primarily, that ECORE's "intent to defraud or mislead the Patent Office is underscored by both the sheer volume of withheld references, as well as the source of the references." (Complaint ¶ 136.) RB Rubber also alleges, in conclusory fashion, that "ECORE lacked any probable cause to prosecute the RB Rubber Pennsylvania action as ECORE did not have, and could not have had, a reasonable belief, and in fact knew that its rubber acoustical underlayment products marked with Patent '723 were not actually patented." (Complaint ¶ 137.) RB Rubber seeks to premise this claim on an inference that ECORE's failure to disclose a large amount of prior art, including that of its own products is evidence that ECORE knew that the '723 patent was invalid and went ahead with the infringement action in spite of this knowledge.

These allegations are simply insufficient to plead that ECORE lacked probable cause in filing its infringement action against RB Rubber.  RB Rubber's theory is not plausibly pleaded as it lacks any particular allegation that ECORE held a subjective belief of validity and its proposed inferential link is too tenuous to support such a claim.  The fact that the patent was reissued in light of the allegedly withheld prior art only further undermines RB Rubber's allegations.  The assertion that ECORE lacked probable cause to prosecute its infringement action is not plausibly pleaded.  For failure of RB Rubber to plead this necessary element of its wrongful initiation of civil suit claim, this

OPINION AND ORDER                          27                          {KPR}

claim is dismissed.

VI.    Motion to Transfer

Having dismissed all of RB Rubber's claims, the court finds this motion moot.

*Conclusion*

For the reasons stated, the court concludes as follows. The requests for judicial notices (#24, 37, 38) are granted consistent with this disposition. The request for declaratory judgment of unenforceability is dismissed without prejudice. The false marking and wrongful initiation of civil proceedings claims are dismissed without prejudice. The antitrust and Lanham Act claims are dismissed with prejudice. As such, the motion to dismiss (#22) is GRANTED in its entirety.

IT IS SO ORDERED.

DATED this 13th day of March, 2012.

_____/s/ John V. Acosta_____
JOHN V. ACOSTA
United States Magistrate Judge

OPINION AND ORDER                  28                  {KPR}