IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

RB RUBBER PRODUCTS, INC., an
Oregon corporation,

               Plaintiff,

     v.

ECORE INTERNATIONAL, INC., formerly
known as Dodge-Regupol, Inc.,

              Defendant.

Civ. No. 3:11-cv-319-AC

OPINION AND
ORDER

ACOSTA, Magistrate Judge:

*Introduction*

    This disposition addresses defendant ECORE International, Inc.'s ("ECORE") second motion

to dismiss Plaintiff RB Rubber Products, Inc.'s ("RB Rubber") claims. The court granted ECORE's

first motion in its entirety, though it dismissed two of RB Rubber's claims without prejudice and

permitted amendment to cure the identified pleading deficiencies. These claims were for false marking and wrongful initiation of civil proceedings (or malicious prosecution). RB Rubber subsequently amended its complaint and ECORE again moves to dismiss the repleaded claims. For the reasons below stated, the court denies the motion with respect to the false marking claim and grants it with respect to the claim for wrongful initiation of civil proceedings.

### Legal Standard

In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the Supreme Court addressed the pleading standard to adequately state a claim under the Federal Rules of Civil Procedure. Rule 8(a) governs pleadings and calls for "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." FED. R. CIV. P. 8(a) (2009). *Twombly* emphasized the need to include sufficient facts in the pleading to give proper notice of the claim and its basis: "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (brackets omitted). Even so, the court noted that "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Id.* at 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

Since *Twombly,* the Supreme Court made clear that the pleading standard announced therein is generally applicable to cases governed by the Federal Rules of Civil Procedure, and not just those cases involving antitrust allegations.

> As the Court held in *Twombly*, the pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers "labels and

conclusions" or "a formulaic recitation of the elements of a cause of action will not do."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555) (internal citations omitted); *see also Villegas v. J.P Morgan Chase & Co.*, No. C 09-00261 SBA, 2009 U.S. Dist. LEXIS 19265, at *7-8 (N.D. Cal. Mar. 6, 2009) ("The Twombly standard, moreover, is of general application and is as easily applied to wage and hour litigation as antitrust."). The Court identified two principles informing the decision in *Twombly*. First, although the court must assume true all facts asserted in a pleading, it need not accept as true any legal conclusions set forth in a pleading. Second, the "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678. The Court advised that "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (citing *Iqbal v. Hasty*, 490 F.3d 143, 157-158 (2nd Cir. 2007)). *See also Sheppard v. David Evans and Assoc.*, Case No. 11-35164, 2012 WL 3983909, at *2 (D. Or. Sept. 12, 2012) (quoting *Iqbal*). The "mere possibility" of misconduct is not enough. *Iqbal*, 556 U.S. at 679. The Court concluded: "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 1950.

## Procedural History

The parties to this action have previously engaged in litigation, in federal court, with respect

to the '723 patent. In 2006, ECORE[1] filed a complaint in the Middle District of Pennsylvania against RB Rubber alleging infringement of the '723 patent. RB Rubber asserted counterclaims against ECORE seeking declaratory judgment of non-infringement, invalidity, and unenforceability, premised in part on alleged inequitable conduct and misrepresentations before the Patent and Trademark Office ("PTO"). After some discovery, ECORE elected to withdraw its claims and convenanted not to sue RB Rubber. As such, ECORE moved to dismiss RB Rubber's counterclaims. The court dismissed all claims on the ground that the covenant not to sue eliminated subject matter jurisdiction. The court explained:

> [ECORE]'s withdrawal of its infringement claims and covenant not to sue RB Rubber for infringement of the '723 patent have eliminated any substantial, immediate controversy between the parties, and thereby also eliminated this Court's jurisdiction over RB Rubber's counterclaims for the invalidity and unenforceability of the '723 patent. As at least one judge in the Federal Circuit has recognized that "it may seem unfair to allow a patentee to first proceed with its infringement claim and then, if the result is not favorable, eliminate the court's jurisdiction over the accused infringer's counterclaim by covenanting not to sue the accused infringer. Fairness is not part of the jurisdictional inquiry, however."

(RB Rubber's Request for Judicial Notice (#37), Exhibit ("Ex.") 1 at 19 (quoting *Fort James Corp. v. Solo Cup Co.*, 412 F.3d 1340, 1354-1355 (Fed. Cir. 2005) (Schall, J. dissenting).) Accordingly, the Pennsylvania court dismissed RB Rubber's requests for declaratory judgment.

The Pennsylvania court, however, retained jurisdiction over RB Rubber's claim for attorney fees and, thus, was still in a position to determine if there was inequitable conduct in the patent prosecution. The court concluded that it "retain[ed] jurisdiction to consider a motion for attorney's

---

[1] The action was actually filed by Dodge-Regulpol, Inc., which is ECORE's former name. There is no dispute between the parties that ECORE was involved in the Pennsylvania litigation, as Dodge-Regulpol, Inc. The core will hereinafter refer to both entities as "ECORE."

fees by RB Rubber under § 285.  In support of that motion, RB Rubber may attempt to prove this is an exceptional case warranting an award of attorney's fees by showing inequitable conduct which would necessarily result in the unenforceability of that patent." *Id.* at 22.

RB Rubber subsequently moved for attorney fees under federal patent law, in particular 35 U.S.C. § 285 (hereinafter "section 285").  Section 285 states: "The court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285 (2011).  The court noted that this exception has been construed narrowly.  It wrote: "As this court has consistently found, however, only a limited universe of circumstances warrant a finding of exceptionality in a patent case: 'inequitable conduct before the PTO; litigation misconduct; vexatious, unjustified, and otherwise bad faith litigation; a frivolous suit or willful infringement.'"  *Wedgetail, Ltd. v. Huddleston Deluxe, Inc.*, 576 F.3d 1302, 1304 (Fed. Cir. 2009) (quoting *Epcon Gas Sys., Inc. v. Bauer Compressors, Inc.*, 279 F.3d 1022, 1034 (Fed. Cir. 2002)).  The court denied the motion on the ground that, even if there were inequitable conduct in prosecution of the '723 patent, RB Rubber did not demonstrate the exceptional circumstances that justify attorney fees under this statutory section. (ECORE's Request for Judicial Notice (#24), Ex.10 at 8.)  In doing so, the court declined to rule on whether ECORE engaged in inequitable conduct during prosecution of the '732 patent.

In related litigation, U.S. Rubber Recycling Inc. ("U.S. Rubber"), another of ECORE's competitors, filed suit against ECORE in the Central District of California, asserting claims for violation of the Sherman Act, declaratory judgment that the '723 patent was invalid and unenforceable, for false marking, for violation of the Lanham Act, and three state law claims for

negligent and intentional interference with economic advantage, and for unfair competition.[2] ECORE moved to dismiss all claims, and the court dismissed the unfair competition claim, but did not dismiss the remaining claims.  Later, in light of the reissue of the '723 patent ("the reissue patent"), which explicitly considered the allegedly withheld prior art from the original proceeding, the court held that U.S. Rubber could not plausibly allege that "but-for" the allegedly withheld prior art the patent would not have issued and, therefore, the Sherman Act claim was dismissed.  ECORE then moved for summary judgment on all remaining claims and the court granted summary judgment in ECORE's favor on U.S. Rubber's request for declaratory judgment that the patent was unenforceable, the Lanham Act violation, and the remaining state law claims for interference with economic advantage.  The court denied summary judgment on the false marking claim.  It is not clear from the disposition the fate of the request for declaratory judgment that the '723 patent was invalid, but this court presumes that it was deemed moot in light of the reissue patent.

Since the California court's first ruling on summary judgment, the law governing false marking claims has changed.  Under the recently enacted Leahy-Smith America Invents Act ("the America Invents Act"), the ability of any individual to sue for the statutory penalty has been modified such that, now, "[o]nly the United States may sue for the penalty" authorized by statute, though an individual who can demonstrate "competitive injury as a result of this section may file a civil action in a district court of the United States for recovery of damages adequate to compensate

---

[2] Although this case is not binding precedent upon this court, the court finds Judge Otero's decision well-reasoned and will refer to it as relevant to the present matter.  Accordingly, such references shall not be construed as erroneous deference to non-binding precedent.  As the Seventh Circuit Court of Appeals has explained, district court opinions are not binding on other district courts, and "[s]uch decisions will normally be entitled to no more weight than their intrinsic persuasiveness merits."  *Colby v. J.C. Penney Co., Inc.*, 811 F.2d 1119, 1124 (7th Cir. 1987).

for the injury." 112 P.L. 29 § 16(1),(2). Due to the intervening change in law, the court permitted additional expert discovery and briefing, as well as a second motion for summary judgment on the issue of competitive injury. The court concluded that U.S. Rubber had failed to create "a triable issue as to whether [U.S. Rubber]'s inability to meet its sales projections was a result of [ECORE]'s false marking." *U.S. Rubber Recycling, Inc. v. ECORE International*, CV 09-09516 SJO (OPx) (C.D. Cal. Dec. 12, 2011). Accordingly, ECORE's motion for summary judgment on U.S. Rubber's false marking claim was granted on December 12, 2011.

RB Rubber filed this action in the District of Oregon against ECORE on March 15, 2011, alleging claims under the Sherman Act, for declaratory judgment of unenforceability, false marking, violations of the Lanham Act, anti-trust claims under Oregon law, and wrongful initiation of civil proceedings. ECORE moved to dismiss the claims for lack of subject matter jurisdiction, for failure to adequately plead, for failure to raise compulsory counterclaims, and under the doctrines of mootness and collateral estoppel. ECORE also requested that, upon dismissing all federal claims, the court decline to exercise supplemental jurisdiction or, in the alternative, that the court transfer the case to the Middle District of Pennsylvania.

The court issued a decision on March 13, 2012. In that decision, the court dismissed all claims. It dismissed RB Rubber's claim for declaratory judgment that the '723 Patent was unenforceable as collaterally estopped by the prior decision in Pennsylvania. And, like the ruling by the Pennsylvania court, the dismissal was without prejudice in light of the fact that it was jurisdictional. The court dismissed RB Rubber's anti-trust claims, one under section 2 of the Sherman Act and the other under Oregon anti-trust law, because the reissue of the '723 Patent in view of all allegedly withheld prior art made it impossible to allege the requisite causation. These

claims were dismissed with prejudice because amendment of the pleadings could not change the fact that the patent had reissued and thus amendment could not cure the pleading deficiency with respect to these claims. The court dismissed RB Rubber's false marking claim because a false marking claim sounds in fraud and, as such, it was pleaded with insufficient particularity. This dismissal was without prejudice, however, as amendment could conceivably remedy the insufficiency. The court dismissed RB Rubber's Lanham Act claim on the ground that ECORE could not have falsely claimed that its product was patented because its product was, in fact, patented. Again, in light of this fact, the court dismissed the claim with prejudice. Finally, the court dismissed RB Rubber's wrongful initiation of civil proceedings claim for failure to plausibly plead that ECORE lacked the subjective belief that its patent was valid at the time it initiated the infringement action against RB Rubber. The court dismissed this claim without prejudice. Having dismissed all claims, the court did not address supplemental jurisdiction or transfer of venue.

*Discussion*

RB Rubber has amended its complaint and now asserts the two claims that were previously dismissed without prejudice: false marking and wrongful initiation of civil suit. ECORE again moves to dismiss both claims. Generally, ECORE contends that the PTO's reissuance of the '723 Patent in light of the allegedly withheld prior art precludes all claims premised on inequitable conduct before the PTO and the patent's invalidity. ECORE argues that the court's conclusion in its previous order – that "RB Rubber cannot establish that had the PTO been aware of the prior art, the patent would not have issued" – is the law of the case precluding this court's reconsideration. ECORE also claims that RB Rubber conceded at oral argument that they could not seek as damages the attorney fees already denied by the Pennsylvania court and, thus, that RB Rubber's wrongful

initiation claim cannot be pleaded for an inability to plead damages.

I.    False Marking

ECORE moves for dismissal of RB Rubber's false marking claim on the grounds that the

patent's validity undermines the claim that the products were falsely marked and that the claim is

not otherwise pleaded with sufficient specificity. "A false marking claim requires an intent to

deceive the public and sounds in fraud. As such, false marking claims must satisfy the heightened

pleading standard of Fed. R. Civ. P. 9(b), which provides that 'a party must state with particularity

the circumstances constituting fraud or mistake.'" *Juniper Networks, Inc. v. Shipley*, 643 F.3d 1346,

1350 (Fed. Cir. 2011) (citations omitted).

> The two elements of a § 292 false marking claim are (1) marking an unpatented article and (2) intent to deceive the public. "Intent to deceive is a state of mind arising when a party acts with sufficient knowledge that what it is saying is not so and consequently that the recipient of its saying will be misled into thinking that the statement is true." A party asserting false marking must show by a preponderance of the evidence that the accused party did not have a reasonable belief that the articles were properly marked. An assertion by a party that it did not intend to deceive, standing alone, "is worthless as proof of no intent to deceive where there is knowledge of falsehood."

*Forest Group, Inc. v. Bon Tool Co.*, 590 F.3d 1295, 1300 (Fed. Cir. 2009) (citing and quoting

*Clontech Labs. Inc. v. Invitrogen Corp.*, 406 F.3d 1347, 1352-1353 (Fed. Cir. 2005)). Since passage

of the America Invents Act, a false marking claim carries a third requirement and a plaintiff must

also establish "competitive injury," and this requirement applies to any case filed at the time of its

passage, including those pending on appeal. *Rogers v. Tristar Products*, 102 U.S.P.Q.2d (BNA)

1722, 2012 U.S. App. LEXIS 8980, at *4-5 (Fed. Cir. May 2, 2012).

RB Rubber presently alleges that ECORE fraudulently obtained the '723 Patent in that the

claimed inventor of the patented device was not the actual inventor and ECORE fraudulently

OPINION AND ORDER                                    9                                    {KPR}

concealed information relevant to the patent application. Furthermore, by inundating the PTO with unnecessary information, RB Rubber claims that ECORE prevented the PTO from accurately evaluating its patent application. RB Rubber also alleges that in falsely marking its products as patented, ECORE warned buyers off of purchasing competing products and intimidated competitors from producing comparable products. RB Rubber also alleges that ECORE threatened legal action in order to dissuade competitors, including an incident wherein ECORE conspicuously served RB Rubber with a legal summons at an industry trade show. These actions have had an anti-competitive effect on the relevant market, RB Rubber alleges, and this has caused it competitive injury. RB Rubber also contends that this presents an exceptional case of inequitable conduct that calls for an award of attorney fees under section 285.

According to RB Rubber, the Pennsylvania court construed the claims of the '723 Patent and, in doing so, interpreted the claim language describing the thickness of the flooring as "about 10 mm" to mean a thickness of between nine and eleven millimeters. Thus, even if the patent is valid, it applies only to flooring of that thickness. In its amended complaint, RB Rubber identifies ECORE products that are marked as protected by the '723 Patent but that are of thicknesses ranging from two to twenty-five millimeters, and alleges that ECORE caused these products and information about these products to enter interstate commerce knowing that the marking and the information were false.

RB Rubber alleges, with respect to competitive injury, that the anti-competitive conduct of ECORE did in fact lead to a decrease in its sales and profits, while those of ECORE increased. RB Rubber states, in conclusion: "ECORE's actions were likely to, or at least have the tendency to, discourage and deter RB Rubber and other companies from commercializing competitive products

OPINION AND ORDER                                    10                                    {KPR}

and deterred consumers from using competing products because if two competitors, such as ECORE and RB Rubber, have similarly priced products that are the same, a consumer would of course buy from ECORE for fear of becoming involved in a costly patent dispute and potential monetary damages." (First Amended Complaint ¶ 103.)

In response to these allegations, ECORE argues that RB Rubber cannot allege false marking because the '723 Patent is valid, ECORE lacked deceptive intent, and RB Rubber cannot establish competitive injury arising from the alleged false marking.

A.    *Validity of the Patent*

ECORE argues that RB Rubber cannot state a claim for false marking based on the '723 Patent because the patent is valid. ECORE cites this court's prior ruling that, with respect to products from nine to eleven millimeters thick, RB Rubber cannot state a claim of false marking as the '723 Patent is valid as to those thicknesses. RB Rubber responds that it provided specific information regarding which ECORE products are falsely marked, namely those in the Regupol-QT and QTscu lines with thicknesses outside of the nine to eleven millimeter range. RB Rubber points to allegations that the marked products includes those with thicknesses of 2, 5, 6, 12, 15, 17, and 25 millimeters, and argues that marking those products as patented under the '723 Patent amounts to false marking. With regard to the specifics, the "who, what, when, where, and how," that were found deficient in the original complaint, RB Rubber provides the following: the identity of the false marker is ECORE; the false marks were placed on ECORE's Regulpol-QT and QTscu products as well as advertisements, manuals, and guides; the marking took place in 2007; the false marks entered interstate commerce through online and direct sales, distribution to third-party sellers, and through references on the website, marketing materials, and product manuals.

OPINION AND ORDER                                    11                                    {KPR}

ECORE responds that it is not sufficient to allege that ECORE marked its products because if it were sufficient to simply name the company itself, the "who" element would be irrelevant to pleading this claim with particularity. ECORE also argues that RB Rubber did not plead the "what" element because it only identified a product with a thickness of ten millimeters which is covered by the valid '723 Patent. ECORE expands on this argument in a footnote, claiming that the amended complaint "does not identify a single product that was marked by ECORE. . . . RB Rubber does not identify any such product because ECORE did not mark its products; rather, it merely placed the '723 patent number on some brochures and manuals." (Def.'s Reply 4 n.2.)

In its amended complaint, RB Rubber identified two products in various thicknesses that were advertised as protected by the '723 Patent. RB Rubber attached two manuals to its amended complaint. One manual describes the product QTscu as being available in thicknesses between five and ten millimeters, and notes that "custom thicknesses are available upon request." (FAC, Ex. G at 6.) On the last page, the manual states: "QTscu is a patented product – Patent No. 6,920,723." *Id.* at 11. The other manual describes "QTscu Rebonded Recycled Rubber [sheet] Impact Sound Insulation Underlayment" as a proprietary product and identifies it as patented under "PATENT NO.: 6,920,723." (FAC, Ex. H at 4.) As RB Rubber points out, it is described directly below the patent number as available in thicknesses of 2, 5, 10, 12, 15 millimeters. *Id.*

ECORE argues that RB Rubber has not identified a single product that is falsely marked. However, "35 U.S.C. § 292(a) states that '[w]hoever marks upon, or affixes to, or uses in advertising in connection with any unpatented article the word 'patent' or any word or number importing the same is patented, for the purpose of deceiving the public . . . [s]hall be fined not more than $500 for every such offense." *Juniper Networks, Inc. v. Shipley*, 643 F.3d 1346, 1350 (Fed. Cir. 2011).

Accordingly, the product need not itself be marked to give rise to a false marking claim; the statute applies if advertising materials falsely identify the product as protected. ECORE argues in reply that the language contained in the manual merely states that QTscu is a patented product, and does not specify which thicknesses fall under the '723 Patent. Although true that the language does not explicitly claim that the '723 Patent covers thicknesses not provided for by the claim language, it also does not explicitly limit the reach of the '723 Patent on its face, and the argument cuts both ways. In the context of a motion to dismiss, however, the inference favors the non-moving party.

Here, ECORE has held out to the public, via its manuals, that products of thicknesses other than nine through eleven millimeters are protected by the '723 Patent. This is sufficient to allege the first element of a claim for false marking, despite the fact that the '723 Patent is valid as to other thicknesses.

### B.    Deceptive Intent

ECORE next argues that RB Rubber has made no particular allegations of deceptive intent by ECORE in falsely marking its products. ECORE argues that RB Rubber's allegations are conclusory and that ECORE's knowledge that it was falsely marking its products has already been undermined by the court's ruling that the patent is valid. RB Rubber responds that under the pleading standard set forth under Rule 9(b) deceptive intent may be alleged generally, though the false marking statute requires some objective indication of knowledge that the marking is deceptive.

The false marking statute does not impose liability in every instance that a product is mismarked as patented. *See Clontech Labs., Inc. v. Invitrogen Corp.*, 406 F.3d 1347, 1352 (Fed. Cir. 2005) (declining to construe the false marking statute as one imposing strict liability). Rather, "[i]ntent to deceive is a state of mind arising when a party acts with sufficient knowledge that what

OPINION AND ORDER                           13                                    {KPR}

it is saying is not so and consequently that the recipient of its saying will be misled into thinking that the statement is true." *Id.* (citing *Seven Cases of Eckman's Alterative v. United States*, 239 U.S. 510, 517-518 (1916)). RB Rubber argues that the claim language covered products with thicknesses of approximately ten millimeters, which language was subsequently interpreted as being between nine and eleven millimeters, and ECORE nonetheless marketed products ranging in thickness from two to fifteen millimeters thick.[3] This, RB Rubber contends, is an objective indication that ECORE knew it was falsely marking some of its products with the '723 Patent and that a reasonable inference can be drawn that ECORE acted with deceptive intent. ECORE responds that the '723 Patent clearly contemplated protection of products with thicknesses of five millimeters, as that thickness is referred to in one of the dependent claims. Thus, ECORE argues, it had a good faith belief that products of varying thicknesses were protected by the patent. Furthermore, ECORE takes issue with RB Rubber's analysis of its marketing materials and argues that the manual language merely identifies QTscu as a patented product.

ECORE next argues that RB Rubber has failed to allege deceptive intent sufficient to undermine the obvious alternative explanation for falsely marking its unpatented products. ECORE takes this language from *Twombly* and *Iqbal*, but the the existence of an "obviously alternative

---

[3] ECORE argues that the amended complaint does not implicate products of thicknesses other than nine to eleven millimeters, citing this allegation: "ECORE has marked its advertisements and products, including the Regupol-QT and QTscu, with the '723 Patent number despite the knowledge that the claims of the '723 Patent clearly do not cover 9-11 mm, and despite that the '723 Patent is invalid or unenforceable, and fraudulently procured." (FAC ¶ 87.) Taken in the context of the complaint as a whole, this is clearly a drafting error and does not represent RB Rubber's actual position which is that the patent covers only products of a thickness from nine to eleven millimeters and that the false marking is attributed to products with thicknesses outside of the patented range. For purposes of this disposition, the court will address the complaint viewed as a whole and will permit amendment to cure the drafting error.

explanation" is not the standard established by these cases. Rather, *Twombly* requires that a plaintiff plead more than mere legal conclusions and that those factual allegations must be plausible, and not merely possible. The holdings of *Twombly* and its progeny do not require that the court determine whether an "obvious alternative explanation" exists, although in a particular case the facts alleged might require the court to consider an alternative explanation when determining plausibility. Here, ECORE contends that the obvious alternative explanation for the allegedly false marking was that it held a good faith belief that its products were patented. Although that does represent one alternative, it is at least equally plausible that ECORE knew that its patent was limited to products of a certain thickness.

The court agrees that it is reasonable to infer that a company possessing a patent for a specific thickness of flooring would know that it was misleading the public by marking flooring of differing thicknesses as protected under that same patent. Here, the allegations present a plausible case that ECORE knew that the '723 Patent marked products that, though similar, are not covered by the claim language. As such, RB Rubber has adequately pleaded deceptive intent.

C.    *Competitive Injury*

Finally, ECORE argues that RB Rubber has failed to adequately plead that it suffered competitive injury as a result of the alleged false marking of ECORE's products. Although the Ninth Circuit has yet to address the definition of competitive injury in the false marking context, district courts in this circuit have done so and their approaches are instructive. In *McCabe v. Floyd Rose Guitars*, CASE NO. 10CV581 JLS (JMA), 2012 U.S. Dist. LEXIS 56604, at **19-20 (S.D. Cal. Apr. 23, 2012), the court looked to the definition of competitive injury under the Lanham Act for guidance: "Relatedly, however, in the Lanham Act context . . . the Ninth Circuit has defined

'competitive injury' as 'harmful to the plaintiff's ability to compete with the defendant.' Under this guidance, the Court reads § 292 as requiring that a plaintiff allege the defendant's false marking was harmful to the plaintiff's ability to compete with the defendant." (quoting *Barrus v. Sylvania*, 55 F.3d 468, 470 (9th Cir. 1995)) (other citations omitted). And, as with the Lanham Act, competitive injury may be presumed: "While the Ninth Circuit has not yet interpreted 'competitive injury' in the patent marking context, as previously interpreted in the context of a Lanham Act claim, the court imposes a general presumption of a competitive injury whenever the defendant and plaintiff are direct competitors and defendant's misrepresentation has a tendency to mislead consumers." *Ira Green, Inc. v. J.L. Darling Corp.*, CASE NO. 3:11-cv-05796-RJB, 2011 U.S. Dist. LEXIS 139552, at *10 (W.D. Wash. Dec. 5, 2011).

Also relevant to the analysis is the legislative intent behind the competitive injury requirement for a false marking claim, as observed by a district court in the Second Circuit. In *Fisher-Price, Inc. v. Kids II, Inc.*, 10-CV-00988A(F), 2011 U.S. Dist. LEXIS 146553 (W.D.N.Y. 2011), the court looked to the legislative history of the American Invents Act, finding that the legislation was intended to prevent abuses in false marking litigation where the claim is initiated by a party not competitively injured. The court cited Congressional testimony: "Currently, such suits are often brought by parties asserting no actual competitive injury from the marking – or who did not even patent or manufacture anything in a relevant industry. Many cases have been brought by patent lawyers themselves claiming the right to enforce a fine of $500 for every marked product." *Id.* at 28 (quoting 157 Cong. Rec. S5319-5321, at 5320). This history suggests that the competitive injury requirement was added to the false marking statute to ensure that the claimant was actually an aggrieved party, and not merely an uninvolved third party seeking only to extract damages.

OPINION AND ORDER                                  16                                  {KPR}

The court adopts the approach of the courts cited above that competitive injury exists where the parties are in competition in the relevant market and the alleged false marking harms the plaintiff's ability to compete. Again, courts have analogized this new statute with the Lanham Act which presumes competitive injury where the parties are competitors and the alleged conduct has the tendency to confuse consumers. The presumption is, of course, rebuttable, but ECORE has not put forth evidence that RB Rubber did not suffer a competitive injury. *See Ira Green, Inc.*, at \*11-12 ("The same policy considerations that the Ninth Circuit considered, that 'competitors vie for the same dollars from the same consumer group, and a misleading ad can upset their relative competitive positions' apply to this context. Furthermore, JLD did not 'point to any evidence . . . that might tend to rebut the presumption.' Therefore, IGI's claim should not be dismissed on the basis that IGI insufficiently alleges a competitive injury.").

Here, RB Rubber alleges that it and ECORE are competitors in the "acoustical underlayment market" and that they manufacture similar and competing products. (FAC ¶ 81.) RB Rubber alleges that ECORE intentionally misled RB Rubber, other competitors, and consumers into believing that certain of its products were patented, thus unlawfully discouraging competitors from competing with ECORE and discouraging consumers from purchasing non-ECORE products. RB Rubber also alleges that ECORE conducted a campaign of misinformation designed to cause additional confusion, which included sending cease and desist letters to competitors, serving RB Rubber personnel at an industry trade show, and falsely informing competitors that RB Rubber's products were infringing. RB Rubber identified two situations in which ECORE's actions negatively impacted RB Rubber's business interests. First, ECORE sent a letter to a competitor, EJ Welch, informing it that ECORE was suing RB Rubber. Second, ECORE interfered with a business

relationship between RB Rubber and Allied Custom Gypsum and, as a result, the contract was cancelled. RB Rubber alleges, by way of explanation, that where two products are substantially similar, a consumer will elect to purchase a patented product in order to avoid involvement in costly patent litigation. Finally, RB Rubber alleges: "As a result of ECORE's actions, i.e. false marking of its products coupled with the intended purpose of deception, RB Rubber has in fact sustained competitive injury through lost profits and sales in the past and future, loss of business relationships, and the loss of the ability to compete in the Relevant Market in the past and future." (FAC ¶ 22.)

These allegations are sufficient to plead competitive injury under the false marking statute. Accordingly, RB Rubber has adequately pleaded its claim for false marking.

II.    Wrongful Initiation of Civil Proceedings

A claim for wrongful initiation of civil proceedings has five elements:

> A plaintiff who seeks damages against one who wrongfully prosecutes a civil action against him must prove the following elements: (1) The commencement and prosecution by the defendant of a judicial proceeding against the plaintiff; (2) The termination of the proceeding in the plaintiff's favor; (3) The absence of probable cause to prosecute the action; (4) The existence of malice, or as is sometimes stated, the existence of a primary purpose other than that of securing an adjudication of the claim; and (5) Damages.

*Alvarez v. Retail Credit Association*, 234 Or. 255, 259, 381 P.2d 499 (1963) (citation omitted; formatting altered). As ECORE notes, this claim was dismissed by the court in the prior motion to dismiss and ECORE contends that the claim as pleaded remains deficient for failure to plead probable cause, malice, or damages.

A.    *Probable Cause*

Previously, the court analyzed the probable cause prong of malicious prosecution and identified a narrow theory upon which RB Rubber could premise a claim. In light of the fact that

OPINION AND ORDER                    18                    {KPR}

the patent reissued after the allegedly withheld prior art was revealed to the PTO, the court concluded that such a claim could only stand if ECORE had a subjective belief that the patent was invalid when it submitted its patent application and withheld the prior art in question. As pleaded at that time, the court concluded that the allegations were insufficient to plead an absence of probable clause and that "RB Rubber's theory [was] not plausibly pleaded as it lack[ed] any particular allegation that ECORE held a subjective belief of [in]validity and its proposed inferential link [was] too tenuous to support such a claim." *Id.* at 27. As such, the court dismissed the claim.

ECORE argues that RB Rubber is precluded from pleading an absence of probable case as a matter of law. ECORE cites *Old Reliable Wholesale, Inc. v. Cornell Corp.*, 635 F.3d 539 (Fed. Cir. 2011), in support of its argument that RB Rubber may not plead that ECORE knew that its patent was invalid and, thus, lacked probable cause to initiate suit.[4] ECORE cites the court's previous Opinion and Order which stated that, per *Old Reliable*, "ECORE could not have known that the patent was invalid because it was, in fact, valid." (Opinion and Order (#46) at 22.) This citation is misleading, however, because the cited portion was merely the court's characterization of ECORE's own argument and does not represent the court's particular conclusion. The citation also comes from the section that addressed the Lanham Act, which claim requires that the patentee have knowledge that the patent was invalid whereas, pursuant to this claim, the court considers whether "the person initiating the civil action 'reasonably believes' that he or she has a good chance of prevailing – that is, he or she subjectively has that belief and the belief is objectively reasonable." *Roop v. Parker Northwest Paving, Co.*, 194 Or. app. 219, 238, 94 P.3d 885 (2004) (quoting *Perry*

---

[4] This argument is presented as two separate bases for dismissal in ECORE's brief, but review of the court's prior decision and relevant case law reveals that the arguments are indistinct.

*v. Rein*, 187 Or. App. 572, 578, 71 P.3d 81 (2003)). These standards are distinct and the court intentionally analyzed them separately.

RB Rubber responds that it amended its allegations to specifically state that ECORE lacked a subjective belief in its patent's validity and cites an affidavit in support of this proposition. RB Rubber specifically alleges: "ECORE lacked any probable cause to prosecute the RB Rubber Pennsylvania action as ECORE had a subject[ive] belief and in fact knew that the '723 patent was invalid as Mr. Downey did not invent the '723 patent, but rather the technology was acquired during a meeting in Europe with Peter Breuer and Thomas Beitzel of BSW in January 2000." (FAC ¶ 112.) In other words, because Downey knew he did not invent the device described by the '723 Patent as asserted in that patent, ECORE could not have held the subjective belief that the patent was valid. RB Rubber references the affidavit of Harry F. Manbeck, Jr. ("Manbeck") in support of this proposition.[5] Manbeck premises his opinion on documents, depositions, and other information provided him by counsel for RB Rubber. Essentially, Manbeck testifies that prior art should have precluded issuance of the patent, that misrepresentations were made in the course of patent prosecution, and that Downey was not the inventor of the device though he is the named inventor, and that this misrepresentation was made with knowledge of its falsity. RB Rubber also argues that the PTO was unable to effectively evaluate the patent application because of the volume of information before it at the time of prosecution. In particular, RB Rubber claims, the PTO was unable to discern that the named inventor was not the actual inventor or that the prior art included rubber acoustical underlayment with the purportedly novel innovation claimed by ECORE in

---

[5] This affidavit is attached as Exhibit A to the First Amended Complaint (#52).

OPINION AND ORDER                    20                    {KPR}

obtaining the '723 Patent.

ECORE argues in reply that the Manbeck affidavit is irrelevant for five reasons.  First, it matters not whether ECORE knew that it had not produced documents prior to the reissue proceedings because the documents proved not to be material as the patent issued after their disclosure.  Second, the Manbeck affidavit points to prior art that was before both the PTO at reissue, and both the California court and this court have already concluded that RB Rubber may not plead that the patent would not have issued but for the previously undisclosed prior art.  Third, the Manbeck affidavit does not address intent and, therefore, does not provide a factual basis that ECORE lacked probable cause to initiate suit against RB Rubber.  Fourth, RB Rubber must plead that an objectively reasonable person would have known that the '723 Patent was invalid but because the patent is in fact valid, this is not possible.  Finally, ECORE argues that RB Rubber has made no plausible allegations that give the court a reason to depart from the obvious explanation for ECORE initiating an infringement suit – that it reasonably believed it had a good chance of prevailing.

RB Rubber's argument is, essentially, that because ECORE knew that the device had been invented by someone other than the named inventor on the patent application, ECORE had the subjective and objectively reasonable belief that the patent was not valid.  This, however, conflates the standard for validity with that of probable cause; the probable cause standard focuses on the belief that one has a good chance to prevail on the subject claim.  Here, having obtained a patent from the PTO initially and upon reissue, there is no evidence that ECORE did not have a subjective and objectively reasonable belief that it had a good chance to prevail in its infringement claim against RB Rubber.  And, to the extent that the Manbeck affidavit is admissible at this stage, Manbeck is explicit in stating that he expresses no opinion as to ECORE's intent in bringing its

infringement claim against RB Rubber.  Accordingly, RB Rubber has failed to plead an absence of probable cause sufficient to survive the motion to dismiss.

> B.    *Malice*

ECORE repeats its argument RB Rubber may not plausibly plead malice where ECORE knew that its patent was valid and, thus, could not have acted with malice in initiating an infringement action against ECORE.  RB Rubber responds that it alleged that ECORE acted with malice and that this allegation is supported by the Manbeck affidavit.  ECORE replies that this allegation is insufficient as it fails to undermine the more obvious explanation and "the court cannot infer the invidious explanation over the obvious alternative explanation." (ECORE Reply 14 (citing *Iqbal*, at 1951-1952).)  ECORE again invokes *Old Reliable* for the proposition that the reissuance of the patent precludes an allegation that ECORE knew its patent was invalid and, accordingly, precludes an allegation that ECORE acted with malice.

RB Rubber's claim that ECORE knew that its patent was not valid, despite its issuance and reissuance by the PTO, speaks more directly to the issue of malice than probable cause and could conceivably provide a basis to find malice in ECORE's actions.  That said, the allegations presently before the court are insufficient to allow the court to plausibly infer that ECORE acted maliciously in asserting its infringement claim against ECORE.

> C.    *Damages*

RB Rubber alleges that it was damaged as a result of the wrongful initiation of civil proceedings in that it incurred attorney fees, costs, and other expenses defending itself in the litigation in an amount of approximately $1,000,000.  ECORE argues that RB Rubber has already sought these fees in the Pennsylvania litigation, which request was denied, and RB Rubber is not

collaterally estopped from seeking them in this court. ECORE further contends that counsel for RB Rubber admitted that it was estopped at oral argument for the prior motion to dismiss. RB Rubber argues that ECORE took the comments of counsel at oral argument out of context and that the damages sought are premised on Oregon law and are distinct from those sought in Pennsylvania.

It is clear from the litigation in Pennsylvania that RB Rubber sought and was denied the same attorney fees under the same statute that would authorize fees for this claim. In Pennsylvania, the court found that, even if inequitable conduct had occurred, it did not rise to the level of an exceptional case sufficient to justify an award of attorney fees. The Pennsylvania court was in the best position to and has already decided this issue.

As it has failed to adequately plead the absence of probable cause, the presence of malice, and cognizable damages, RB Rubber's claim for wrongful initiation of civil proceedings is dismissed. Because RB Rubber already has been afforded an opportunity to cure these specific pleading deficiencies, this claim is dismissed with prejudice.

## Conclusion

For the reasons stated, ECORE's motion to dismiss (#54) is GRANTED in part and DENIED in part.

IT IS SO ORDERED.

DATED this 14th day of September, 2012.

JOHN V. ACOSTA
United States Magistrate Judge